1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                         EASTERN DIVISION

11  ISMELDA MATA DE DIAZ,            )  No. ED CV 17-0915-DFM
                                     )
12              Plaintiff,           )
                                     )  MEMORANDUM OPINION AND
13          v.                       )  ORDER
                                     )
14  NANCY A. BERRYHILL, Deputy       )
    Commissioner of Operations,      )
15  performing duties and functions not )
    reserved to the Commissioner of  )
16  Social Security,                 )
                                     )
17                                   )
                                     )
18              Defendant.           )
                                     )
19  _____)

20

21       Ismelda Mata De Diaz ("Plaintiff") appeals from the Social Security

22  Commissioner's final decision denying her application for Social Security

23  Disability Insurance Benefits ("DIB"). The Commissioner's decision is

24  REVERSED and this case is REMANDED for further proceedings.

25                              **I.**

26                        **BACKGROUND**

27       Plaintiff filed an application for DIB on June 28, 2013, alleging disability

28  beginning October 10, 2010. See Dkt. 17, Administrative Record ("AR") 135-

37. After Plaintiff's application was denied at the initial and reconsideration levels, she requested a hearing before an Administrative Law Judge ("ALJ"). See AR 74-78, 80-87. A hearing was held on December 14, 2015, at which Plaintiff and a vocational expert ("VE") testified. See AR 28-52.

On January 13, 2016, the ALJ issued a written decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. See AR 6-27. The ALJ found that Plaintiff had the severe impairments of head and neck strain with accompanying headache, degenerative disc diseases of the cervical spine, and diabetes mellitus. See AR 11. The ALJ further found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with some limitations, was 48 years old on the date last insured, had a marginal education and was able to communicate in English, and had an unskilled work history. See AR 14, 20. After finding that Plaintiff was unable to perform any of her past relevant work, the ALJ found that there were jobs existing in significant numbers in the national economy that Plaintiff could perform, including inspector (Dictionary of Occupational Titles ("DOT") 920.687-194), assembler (DOT 920.687-122), and packager (DOT 559.687-074). See AR 20-21. Accordingly, the ALJ determined that Plaintiff was not disabled. See AR 21.

On January 26, 2016, Plaintiff requested that the Appeals Council review the ALJ's decision. See AR 5. The Appeals Council denied review on March 8, 2017. See AR 1-4. This action followed.

## II.

## DISCUSSION

A.   **Literacy Findings**

The ALJ found that Plaintiff "has a marginal education and is able to communicate in English." AR 20. Plaintiff contends this finding was not supported by substantial evidence because the record does not establish

Plaintiff's literacy in English. See Dkt. 24, Joint Statement ("JS") at 5-6.

At step five, an ALJ must assess both a claimant's literacy and ability to communicate in English. See 20 C.F.R. § 404.1564(b). Literacy pertains to the ability to read and write in English. See Chavez v. Dep't of Health & Human Servs., 103 F.3d 849, 852 (9th Cir. 1996) ("[O]nly literacy in English is considered, since literacy in other languages has little effect on the number of jobs in the national economy available to the claimant."). A claimant is considered illiterate if he or she "cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." 20 C.F.R. § 404.1564(b)(1). The Commissioner bears the burden of establishing that a claimant is literate. See Silveira v. Apfel, 204 F.3d 1257, 1261 (9th Cir. 2000). A claimant with the capability to communicate in English is one who can "speak, read, and understand" the language. 20 C.F.R. § 404.1564(b)(5).

Before the hearing, Plaintiff affirmatively stated that she could not speak, read, understand, or write more than her name in English. See AR 147. Plaintiff testified—with the assistance of a Spanish interpreter—that she completed up to sixth grade in Mexico but had no education in the United States. See AR 33-34. Midway through the hearing, Plaintiff answered a question in English, which prompted the ALJ to ask about her English skills:

> ALJ: Can you speak English? Because you just spoke English.
>
> PLAINTIFF: No, it was easy for me to say that. I speak a little bit.
>
> ALJ: How much do you speak, because you just said that rather fluently?
>
> PLAINTIFF: I'm able to understand directions, I'm able to state directions or give me this this [sic], give me that, so small phrases like that.

AR 37.

Plaintiff's literacy (or lack thereof) did not come up again. The ALJ later instructed the VE to consider Plaintiff's "age and education" when answering hypotheticals but made no mention of Plaintiff's English skills. See, e.g., AR 46 ("I'd ask that you assume a hypothetical individual of the Claimant's age and education and with the past jobs you've described.").

Even if Plaintiff's response to the ALJ supported an inference that Plaintiff could communicate in English, nothing in Plaintiff's testimony supported the ALJ's implied finding that she was capable of reading and writing in English a simple message such as instructions or inventory lists, which is how the Commissioner's regulations distinguish a literate person from an illiterate person. See Silveira, 204 F.3d at 1261 n.13 (clarifying that a claimant meets the criterion of "illiterate or unable to communicate in English" if they are illiterate or unable to communicate in English or both).

Instead, the record evidence strongly suggests Plaintiff is illiterate: she asserts she cannot read, write, or speak English, see AR 147; uses a translator when available, see AR 28 (oral hearing), 313 (visit with Javier Rios, M.D.), 372 (orthopedic consultation); and relies on her children to fill out paperwork, see AR 166 (8/20/13 Function Report), 196 (8/20/13 Work History Report), 231 (12/27/13 Function Report).

Other courts have found that similarly scant evidence of a claimant's ability to read and write in English falls short of carrying the Commissioner's burden of establishing literacy. See Jeffrey v. Berryhill, No. 17-1444, 2018 WL 3656154, at *4-5 (S.D. Cal. Aug. 2, 2018) (collecting cases); see also Obispo v. Astrue, No. 11-9381, 2012 WL 4711763, at *4 (C.D. Cal. Oct. 3, 2012) (finding error where claimant testified that he could read and speak "a little bit" of English, but it was unclear what plaintiff meant by "a little bit" or how significant this evidence was in relation to the other evidence of claimant's English skills); Calderon v. Astrue, No. 08-1018, 2009 WL 3790008, at *9-10

(E.D. Cal. Nov. 10, 2009) ("A vague response of '[a] little bit' in response to whether or not a claimant can read or write English is insufficient to establish that Plaintiff can read or write a simple message in the English language.").

The Commissioner first argues no error occurred because the VE was present during Plaintiff's testimony and thus was fully aware of her English language abilities. Whatever the VE did or did not know would not discharge the ALJ's obligation to make a proper literacy finding. In any event, the Commissioner's assertion that the VE understood Plaintiff's language skills begs the question of what those skills are. Indeed, the ALJ's comment that Plaintiff spoke English "rather fluently" may have caused the VE to overestimate Plaintiff's English skills.

The Commissioner next argues that Plaintiff's testimony demonstrates language skills necessary for the jobs the VE identified. Even if those jobs require low language skills, however, they may still require a reading or writing level that is higher than Plaintiff's capabilities. For example, an inspector is classified as Language Level 1, which requires that the worker recognize the meaning of 2,500 words, read at a rate of 95-120 words per minute, and print and speak simple sentences. See DOT 920.687-194, 1991 WL 688008. It is not evident that Plaintiff can do this.

Third, the Commissioner contends that Plaintiff waived this issue by not raising it to the ALJ, relying on Chief Magistrate Judge Walsh's oft-cited statement that "[c]ounsel are not supposed to be potted plants at administrative hearings." JS at 8-9 (citing Solorzano v. Astrue, No. 11-369, 2012 WL 84527, at *6 (C.D. Cal. Jan. 10, 2012)). Solorzano involved "apparent conflicts" between the VE's testimony and the DOT, which could have (and should have) been brought to the VE's attention by counsel during the hearing. See Solorzano, 2012 WL 84527, at *6 ("[Counsel] never asked the vocational expert about any conflicts with the DOT, apparent or otherwise, and never

prodded the ALJ to do so, either."). Here, in contrast, the issue of Plaintiff's literacy did not ripen until the ALJ's written decision. A waiver finding would not be appropriate.

Fourth, citing Pinto v. Massanari, 249 F.3d 840 (9th Cir. 2001), the Commissioner argues that illiteracy does not necessarily mean a claimant is unable to work. The Court does not disagree and is not making a finding of disability here. Instead, the Court will remand this case for additional findings with respect to Plaintiff's literacy and its impact on her ability to find and perform jobs that exist in the national economy. See id. at 847-48 (noting that a "claimant is not per se disabled if he or she is illiterate" but nevertheless remanding the case for additional findings).

Fifth and finally, the Commissioner contends any error would be harmless because Plaintiff worked over ten years as a machine operator, which is a Language Level One job with similar duties to those that Plaintiff would perform in the occupations identified by the VE. See DOT 920.685-078, 1991 WL 687942. Courts have routinely rejected similar arguments. See, e.g., Obeso v. Colvin, No. 15-151, 2015 WL 10692651, at *16 (E.D. Cal. Apr. 20, 2015) (noting that the Ninth Circuit has "resoundingly rejected" the argument that a claimant's prior work would excuse an ALJ from explaining how the claimant's language limitations would impact her ability to perform jobs identified by the VE) (citing Pinto, 249 F.3d at 847). In addition, Plaintiff never testified about the specifics of her job as a machine operator, so the Court is unable to determine if her duties as she performed them were consistent with the DOT definition.

**B. VE Hypothetical**

Plaintiff contends the ALJ erred in directing the VE to assume a fact not in evidence, i.e., that the need to stand and stretch for five minutes would not interfere with Plaintiff's ability to engage in gainful employment. See JS at 12-

6

13. Even if this was error, it was harmless. The ALJ did not incorporate this restriction into the RFC, instead adopting the prior hypothetical whereby Plaintiff was limited to light work and would need a "sit/stand option every hour without going off task." See AR 14 (incorporating hypothetical from AR 47).

## C.    **Plaintiff's Credibility Determination**

Plaintiff contends that substantial evidence does not support the ALJ's assessment of her subjective symptom testimony. See JS at 15-18.

### 1.    **Applicable Law**

The Ninth Circuit has established a two-step analysis for determining the extent to which a plaintiff's symptom testimony must be credited. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1014-15 (quoting Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). In weighing credibility, an ALJ may consider a Plaintiff's reputation for truthfulness, inconsistencies either in her testimony or between her testimony and her conduct, her daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. See Smolen, 80 F.3d at 1284. If the ALJ's credibility finding is supported by substantial evidence in the

record, the reviewing court "may not engage in second-guessing." <u>Thomas v. Barnhart</u>, 278 F.3d 947, 959 (9th Cir. 2002).

**2. Analysis**

Plaintiff testified that she last worked in 2009 for a dry cleaner. <u>See</u> AR 40. She explained she no longer works due to diabetes, which causes numbness and tingling in her lower extremities. <u>See</u> AR 35. Plaintiff has pain in her neck, arms, and elbows, as well as in her foot, where she had a neuroma removed. <u>See</u> AR 35-36, 39. Plaintiff estimated her pain was usually a seven or eight out of ten, and sometimes a ten out of ten. <u>See</u> AR 38. She also suffers from migraines, which radiate into her face. <u>See</u> AR 39. Plaintiff also submitted several Adult Function Reports, which were of the same general nature as the subjective complaints from her testimony. <u>See</u> AR 158-84, 210-36.

First, the ALJ noted that Plaintiff's allegations of numbness and tingling were unsupported by objective medical evidence. <u>See</u> AR 16. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005). Substantial evidence supports the ALJ's conclusion. As noted by the ALJ, a December 2012 orthopedic evaluation revealed no evidence of neurologic deficit. <u>See</u> AR 315. A physical examination in October 2013 similarly revealed that Plaintiff had normal motor strength and normal sensation in lower extremities. <u>See</u> AR 376. Plaintiff cites to three medical records in opposition, none of which is helpful because they are either outside the relevant disability period or do not support her allegations. <u>See</u> AR 544 (dated February 19, 2015, after Plaintiff's date last insured), 285 (dated October 6, 2010, before Plaintiff's alleged onset date), 283 (Plaintiff denying any increase in numbness or tingling). The ALJ validly weighed inconsistency with the objective medical evidence as one of several factors supporting her decision to discount Plaintiff's symptom testimony. <u>See</u>

Burch, 400 F.3d at 681.

The ALJ also discounted Plaintiff's symptom testimony because there was evidence she stopped working for reasons not related to the allegedly disabling impairment. See AR 16. Indeed, Plaintiff's Disability Report states she stopped working as an assembler on October 10, 2009 because of her disability. See AR 149 ("Why did you stop working? Because of my condition(s)."). At the hearing, however, Plaintiff testified that she was fired from that job as part of a reduction in force. See AR 40. It was appropriate for the ALJ to discount Plaintiff's credibility based on these inconsistencies. See Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).

Finally, the ALJ discounted Plaintiff's credibility because her daily activities were inconsistent with her alleged limitations. See AR 16. "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014). Plaintiff described constant, severe pain throughout her body, and difficulty lifting, standing, and sitting. See AR 35-42. Yet Plaintiff engaged in a somewhat normal level of daily activity and interaction. For example, Plaintiff attends church, goes shopping, takes care of her pets, and performs household chores, among other things. See AR 43-44, 175, 222. While the Social Security Act "does not require that claimants be utterly incapacitated to be eligible for benefits," Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989), the ALJ appropriately found that Plaintiff's allegations did not match her daily activities.

On appellate review, the Court's role is not to reweigh the evidence supporting or undermining Plaintiff's credibility. The ALJ provided sufficiently specific, clear and convincing reasons for discounting Plaintiff's subjective complaints about the severity of her physical impairment.

**D.  Remand for Further Proceedings Is Appropriate**

The decision whether to remand for further proceedings is within this Court's discretion. See Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended). A remand is appropriate where there are outstanding issues that must be resolved before a determination of disability can be made and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003).

Here, remand is appropriate for the ALJ to further develop the record to assess Plaintiff's literacy and education level. When doing so, the ALJ should conduct any assessments deemed appropriate to determine the extent to which Plaintiff can read and write English. Any literacy limitations supported by substantial evidence shall be presented to the VE who should then address how Plaintiff's literacy levels, coupled with her other limitations, would impact Plaintiff's ability to perform any available jobs.

## III.

## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is REVERSED and the action is REMANDED for further proceedings.

Dated:  December 17, 2018

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge